Case No. 18-2213

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

Lorenzo Pledger,
Plaintiff - Appellant,

v.

United States of America, *et al*.
Defendants - Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
District Judge John Preston Bailey

## APPELLEES' BRIEF


| | |
|---|---|
| Respectfully Submitted,<br><br>William J. Powell<br>United States Attorney<br><br>By: */s/ Tara N. Tighe*<br>Assistant United States Attorney<br>WV Bar No. 12931<br>PO Box 591<br>Wheeling, WV 26003<br>Phone: (304) 234-0100<br>Fax: (304) 234-0112<br>*Counsel for Federal Appellees*[1] | */s/ Christine Vaglienti*<br>West Virginia University Health System<br>WV Bar No. 4987<br>1238 Suncrest Towne Centre<br>Morgantown, WV 26505<br>Phone: (304) 598-4199<br>Fax: (304) 598-9888<br>*Counsel for St. Joseph's Hospital* |


[1] As detailed in the Restatement of the Case herein, the federal defendants at issue in this appeal are the United States of America and individual federal defendants Anderson, Alicia Wilson, and Andrea Hall. Assistant United States Attorney Tara N. Tighe appears exclusively on behalf of the federal appellees as counsel employed by the United States Department of Justice. In contrast, attorney Christine Vaglienti appears exclusively on behalf of St. Joseph's Hospital. The arguments of all appellees are consolidated into one brief in compliance with this Court's rules and the applicable briefing order in this matter. The arguments are asserted exclusively on behalf of the respective parties.

**TABLE OF CONTENTS**

Table of Authorities ........................................................... ii-v

Jurisdiction ............................................................... 1

Issues ....................................................................... 2

Restatement of the Case ................................................. 3-6

Standard of Review ...................................................... 7

Argument Summary ....................................................... 8-10

Argument ................................................................ 11-33

Conclusion ................................................................ 33

Oral Argument ........................................................... 34

Certificate of Compliance .............................................. 35

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Liberty Lobby*, 477 U.S. 242, 247-50 (1986) ........................ 30, 31

*Banfi v. Am. Hosp. for Rehabilitiation*, 529 S.E.2d 600 (W. Va. 2000) .... 14, 15, 22

*Beale v. Hardy*, 769 F.2d 213 (4th Cir.1985) ..........................................30

*Bell v. Wolfish*, 441 U.S. 520 (1979) ...................................................... 25

*Benzman v. Whitman*, 523 F.3d 119 (2d Cir. 2008) ................................... 24

*Bivens v. Six Unk. Fed Agts of Fed Bur of Narcotics*, 403 U.S. 388 (1971) .. *passim*

*Bowring v. Godwin*, 551 F.2d 44 (4th Cir. 1977) .................................. 27-28

*Carlson v. Green*, 446 U.S. 14, 21 (1980) ............................................. 24

*Carter v. United States*, 2019 WL 7501396 (S.D. W. Va. Dec. 13, 2019), *Report and Recommendation Adopted by Carter v. United States*, 2020 WL 97720 (S.D. W. Va. Jan. 8, 2020) ..................................................................................... 18

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ..............................,, 30-31

*Corr. Servs. Corp. v. Malesko*, 534 U.S. 61 (2001) .................................. 24

*Dalehite v. United States*, 346 U.S. 15 (1953)) ........................................ 11

*Davison v. Sinai Hosp.*, 462 F. Supp. 778 (D. Md. 1978), *aff'd by Davison v. Sinai Hosp.*, 617 F.2d 361 (4th Cir. 1980) ........................................... 16-17, 18

*Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55 (4th Cir.1995) ....... 30

*Estelle v. Gamble*, 429 U.S. 97 (1976) ........................................ 16, 26-27

*Farley v. Shook*, 629 S.E.2d 739, 744-45 (W.Va. 2006) ................................ 22

*Farmer v. Brennan*, 511 U.S. 825 (1994) ......................................... 26-27

*Felty v. Graves-Humphreys Co.*, 818 F.2d 1126 (4th Cir. 1987) ................. 29-30

*FDIC v. Meyer*, 510 U.S. 471 (1994) ................................................... 11

*Hall v. Clinton*, 235 F.3d 202, 204 (4th Cir. 2000) ...................................... 24

*Hanna v. Plumer*, 380 U.S. 460 (1965) ................................................. 17

*Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214 (4th Cir. 2002) ....... 7

*Henderson v. United States*, 785 F.2d 121, 123 (4th Cir. 1986) ............................ 13

*Hernandez v. Mesa*, 140 S. Ct. 735 (2020) ............................................ 25

*Hinchman v. Gillette*, 217 W. Va. 378, 385 (2005) ..................................... 15-16, 23

*Holloway v. Coakley, et al.*, Case No. 2:17-cv-74 (N.D. W. Va. Apr. 8, 2019) ... 24

*Hughes v. Rowe*, 449 U.S. 5 (1980) (per curiam) ..................................... 16

*Iko v. Shreve*, 535 F.3d 225 (4th Cir. 2008) ........................................... 27

*Jackson v. Lightsey*, 775 F.3d 170 (4th Cir. 2014) ..................................... 27

*Jerome Scott v. US*, 2020 WL 1502857, at *3 (N.D. W. Va. Mar. 30, 2020) ....... 17

*Jones v. North Carolina Prisoner's Union*, 433 U.S. 119 (1977) ...................... 25

*Kielwien v. US*, 540 F.2d 676 (4th Cir. 1976), *cert. den'd*, 429 U.S. 979 (1976) ... 13

*Kokotis v. U.S. Postal Serv.*, 223 F.3d 275 (4th Cir. 2000) ............................ 12

*Lancaster v. USP Hazelton*, 742 F. App'x 724 (4th Cir. 2018) ...................... 7, 17

*Lebron v. Rumsfeld*, 670 F.3d 540 (4th Cir. 2012) ..................................... 24

*McCray v. Md Dept Transp., Md Transit Admn.*, 741 F.3d 480 (4th Cir. 2014) ….. 7

*McNeil v. United States,* 508 U.S. 106, 113 (1993) ............................................ 16

*Medina v. United States,* 259 F.3d 220 (4th Cir. 2001) …………………………... 12

*Murphy v. Schwartz*, 739 S.W. 2d 777 (Tenn. Ct. App. 1986) …………………... 15

*Myrick v. US*, 723 F.2d 1158 (4th Cir. 1983) ……………………………………. 12

*O'Neill v. US,* 2008 WL 906470 (S.D. W.Va. Mar. 31, 2008) …………………... 22

*Osborne v. US*, 166 F. Supp. 2d 479 (S.D. W. Va. 2001) …………………… 13, 14

*Procunier v. Martinez*, 416 U.S. 396 (1974), *rev'd in part on other grounds,*

*Radin v. US,* 699 F.2d 681 (4th Cir.1983) ……………………………………... 26

*Rayonier Inc. v. US*, 352 U.S. 315 (1957) ……………………………………... 12

*Rhodes v. Chapman*, 452 U.S. 337 (1981) ……………………………………. 26

*Rhodes v. E.I. du Pont de Nemours & Co.*, 636 F.3d 88, 94 (4th Cir. 2011) …...... 31

*Russell v. Sheffer*, 528 F.2d 318 (4th Cir. 1975) ……………………………........ 26

*Sosebee v. Murphy*, 797 F.2d 179 (4th Cir. 1986) ………………………………... 28

*Stanley v. US*, 321 F. Supp. 2d 805 (N.D. W. Va. 2004) ..... 14, 15, 17-18, 19, 21, 23

*State ex rel. PrimeCare Medical v. Faircloth*, 835 S.E.2d 579 (2019) …………... 22

*Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115 (4th Cir.1996) …... 31

*Thornburgh v. Abbott*, 490 U.S. 401 (1989) ……………………………………... 26

*Totten v. Adongay*, 337 S.E. 2d 2 (W. Va. 1985) ………………………………… 15

*Tun-Cos v. Perrotte*, 2019 WL 1867819, at *4 (4th Cir. Apr. 26, 2019) ……….... 24

*Turner v. Safley*, 482 U.S. 78 (1987) …………………………………………...... 26

*United States v. Sherwood*, 312 U.S. 584 (1941) ……………………………….... 11

*United States v. Sosa*, 364 F.3d 507 (4th Cir. 2004) ……………………………... 16

*United States v. Testan*, 424 U.S. 392, 399 (1976) ………………………………. 12

*Welch v. United States*, 409 F.3d 646 (4th Cir. 2005) ……………………………. 11

*Wilkie v. Robbins*, 551 U.S. 537 (2007) ………………………………………….. 24

*Wood v. United States*, 845 F.3d 123 (4th Cir. 2017) ……………………………. 11

*Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985) …………………………………. 27

*Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017) ……………………………………... 24-25

**<u>Statutes</u>**

18 U.S.C. § 4042 ………………………………………………………………... 26

28 U.S.C. § 1346 ………………………………………………………………... 11

28 U.S.C. § 2401 …………………………………………………………….. 12-13

28 U.S.C. § 2675 …………………………………………………………….. 12-13

W. Va. Code § 55-7B ………………………………………………… *passim*

**<u>Rules</u>**

Fed. R. Civ. P. 1 ……………………………………………………...... 18, 19

Fed. R. Civ. P. 56 ………………………………………………………… 31, 32

## JURISDICTION

The appellees stipulate to the appellant's jurisdictional statement.

# ISSUES

1. Whether the district court abused its discretion when it determined that Plaintiff Lorenzo Pledger was required to submit a screening certificate of merit in compliance with the West Virginia Medical Professional Liability Act ("MPLA") before he filed a Federal Tort Claims Act ("FTCA") lawsuit and a medical negligence lawsuit in federal court.

2. Whether the district court abused its discretion when it dismissed Pledger's claims against Federal Bureau of Prisons ("BOP") employees Anderson, Alicia Wilson, and Andrea Hall because they were not deliberately indifferent to Lorenzo Pledger's medical needs.

## RESTATEMENT OF THE CASE

### A. Procedural history.

Lorenzo Pledger filed a lawsuit in the United States District Court for the Northern District of West Virginia purporting to allege both a medical negligence claim against the United States of America pursuant to the FTCA and a constitutional civil rights claim against various individual federal government employees and St. Joseph's Hospital ("SJH") pursuant to *Bivens v. Six Unknown Federal Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) related to medical treatment received while Pledger was incarcerated at the Federal Correctional Institution in Glenville, West Virginia ("FCI Gilmer"). *See* Report and Recommendation, JA 878-955; District Court Dismissal Order, JA 976-998.

Relatively early in the district court litigation underlying this appeal, the district court dismissed individual federal defendants Charles Williams, Sabrina Hudnall, Ruthie Carson, Salvatore Lanasa, Johanna Lehmann, Todd Savidge, and Andrea Smith-Posey because Pledger failed to timely serve those defendants. *See Pledger v. United States, et al.*, United States District Court for the Northern District of West Virginia Case No. 2:16-cv-83, Order Dismissing Certain Defendants, Docket Entry No. 98. Those defendants were not part of the substantive district court proceedings and are, therefore, not part of this appeal. *Id*.

The magistrate judge recommended that the district court dismiss individual federal defendants Rebecca Grove and Joshua Hall because they are entitled to absolute immunity from personal liability as United States Public Health Service employees. *See* Report and Recommendation, JA 938-940. Pledger did not specifically object to this recommendation and defendants Rebecca Grove and Hall were dismissed from the district court proceedings. *See* Pledger Objections to Report and Recommendation, JA 966-973; District Court Dismissal Order, JA 976-998. Pledger waived his right to appeal the dismissal of defendants Grove and Hall when he failed to specifically object to their dismissal and those defendants are, therefore, not part of this appeal and not addressed in Pledger's opening appellate brief. *See* Pledger Brief, ECF No. 20.

The district court dismissed individual federal defendants Lynch, Samuels, Caraway, and Weaver because they were not personally involved in the events underlying this case and, therefore, not subject to personal liability. *See* District Court Dismissal Order, JA 996-997. Pledger does not challenge the dismissal of individual federal defendants Lynch, Samuels, Caraway, and Weaver in this appeal. *See* Pledger Brief, ECF No. 20.

With respect to individual federal defendants Anderson, Alicia Wilson, and Andrea Hall, Pledger challenges the district court's deliberate indifference analysis with respect to individual federal defendants. *See* Pledger Brief, ECF No. 20.

With respect to the United States of America, Pledger challenges the district court's determination that he was required to file a certificate of merit in compliance with West Virginia state law before he filed an FTCA lawsuit against the United States of America in federal court. *See* Pledger Brief, ECF No. 20.

Based on the forgoing, the only federal defendants at issue in this appeal are the United States of America and individual federal defendants Anderson, Alicia Wilson, and Andrea Hall because these are the only federal defendants that Pledger substantively addresses in this appeal. *See* Pledger Brief, ECF No. 20.

With respect to Saint Joseph's Hospital[2] ("SJH"), the district court concluded that SJH is not a proper *Bivens* defendant. JA 935. Pledger does not challenge that conclusion in this appeal. *See* Pledger Brief, ECF No. 20. Rather, Pledger appears to argue only that the Federal Rules of Civil Procedure displace the WV MPLA pre-suit notice requirements and, therefore, he was not required to provide SJH with a notice of claim or screening certificate of merit before filing his claim against SJH in federal court.

**B. Facts.**

Pledger was diagnosed with Crohn's disease before he arrived in federal prison. *See* District Court Dismissal Order, JA 979. He was not on any Crohn's

[2] As counsel for the United States Department of Justice, Assistant United States Attorney Tara N. Tighe appears in this appeal exclusively on behalf of the federal appellees. Any references to St. Joseph's Hospital or any arguments asserted on behalf of St. Joseph's Hospital are asserted exclusively by attorney Christine Vaglienti on behalf of St. Joseph's Hospital.

disease medication when he arrived in federal prison. *Id*. Prison medical staff repeatedly examined and evaluated Pledger and consistently provided him treatment, including repeated evaluations, medication, testing, monitoring, and specialty referrals. *See* Report and Recommendation, JA 883-915; District Court Dismissal Order, JA 979-980. The district court highlights that prison medical records document at least thirty-six (36) medical appointments. *Id*. At various times, Pledger refused to comply with recommended medications, dietary changes, and testing. *Id*. Notably, Pledger refused to attend a scheduled colonoscopy test. *Id*.

With respect to his medical negligence tort claim against the United States of America, Pledger filed his FTCA lawsuit in the district court without first filing a screening certificate of merit as required by West Virginia state law. *See* District Court Dismissal Order, JA 992-995. Pledger understood that he needed to file the screening certificate because he asked for additional time to do so. *See* Motion for Extension of Time, JA 100-101; District Court Dismissal Order, JA 993. The district court gave him the extra time, but Pledger never filed the certificate. *See* District Court Dismissal Order, JA 993.

## STANDARD OF REVIEW

With respect to whether Pledger was required to file a certificate of merit in compliance with West Virginia state law before he filed an FTCA medical negligence tort lawsuit in federal court, a decision regarding whether to require an expert is within the discretion of the district court and this Court reviews any such determination for abuse of discretion. *Lancaster v. USP Hazelton*, 742 F. App'x 724, 726 (4th Cir. 2018).

With respect to the deliberate indifference allegations against Anderson, Alicia Wilson, and Andrea Hall, this Court reviews the district court’s disposition of these allegations by granting dismissal or summary judgment without additional discovery for abuse of discretion. *McCray v. Maryland Dep't of Transp., Maryland Transit Admin.*, 741 F.3d 480, 483 (4th Cir. 2014) (citing *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002)).

## ARGUMENT SUMMARY

**A. The district court did not abuse its discretion when it concluded that Pledger was required to file a screening certificate of merit in compliance with West Virginia state law *before* he filed an FTCA medical negligence lawsuit against in federal court.**

In West Virginia, allegations of medical negligence or malpractice must generally be supported by expert testimony. Specifically, West Virginia law requires a prospective plaintiff alleging medical negligence or malpractice to file a screening certificate of merit before he files a lawsuit.

The screening certificate of merit is a statement by an expert medical professional providing his opinion regarding how the alleged wrongdoer breached the applicable medical standard of care. The certificate of merit is an important prerequisite that must be effectuated before a prospective plaintiff can file a medical negligence lawsuit. This requirement is not a formulaic checkbox. It is not meant to arbitrarily deter or prevent a prospective plaintiff from accessing the court system. Rather, requiring a prospective plaintiff to file a screening certificate of merit before he files a lawsuit deters frivolous medical negligence lawsuits and promotes early resolution of viable medical negligence and malpractice claims.

The certificate of merit requirement derives from West Virginia state law. However, the requirement is substantive in nature. Specifically, the nature of litigation would be drastically different if prospective plaintiffs had to produce a certificate of merit before they could file a lawsuit in state court but not in federal

court. The certificate requirement does not conflict with other federal rules and requirements, rather a prospective plaintiff must comply with all applicable rules and requirements. Accordingly, the West Virginia screening certificate of merit requirement applies equally in federal court as in West Virginia state court. A plaintiff seeking to allege medical negligence in a federal court located in West Virginia pursuant to the FTCA must first file a screening certificate of merit in compliance with West Virginia State law. Pledger knew he needed to file a screening certificate of merit, even asking the district court for additional time to do so. He never filed the certificate. Accordingly, the district court did not abuse its discretion when it dismissed Pledger's FTCA medical negligence claim because Pledger never filed the screening certificate of merit in compliance with West Virginia State law.

**B. The district court did not abuse its discretion to grant dismissal or summary judgment in favor of federal defendants Anderson, Alicia Wilson, and Andrea Hall with respect to Pledger's deliberate indifference allegations pursuant to *Bivens*.**

Pledger fundamentally misconstrues the procedural history of this case. The district court did not convert a motion to dismiss on behalf of the individual federal defendants into one for summary judgment. Rather, the individual defendants filed a consolidated motion that, from the outset, requested dismissal or, in the alternative, summary judgment. Therefore, Pledger was on notice from the time that he received the aforementioned motion that the defendants were seeking *either* dismissal or summary judgment and that the court could employ *either* standard. The district

court is empowered to dismiss a case or grant summary judgment where, as here, the available evidence demonstrates that the plaintiff cannot establish essential elements of his claim. Here, the medical evidence demonstrated definitively that prison medical staff at FCI Gilmer provided repeated and consistent treatment to Pledger. Although Pledger may disagree with that treatment, especially with the benefit of hindsight, the district court properly determined that Pledger could not establish that defendants Anderson, Alicia Wilson, and Andrea Hall were deliberately indifferent to his Crohn's disease. Moreover, to impose personal financial liability on these defendants in a *Bivens* lawsuit is an extreme and disfavored remedy. The district court relied upon the available evidence to support its decision and Pledger has not established that any additional evidence was necessary to prove his case. The court did not abuse its discretion in granting dismissal or summary judgment in favor of defendants Anderson, Alicia Wilson, and Andrea Hall based upon the available evidence.

# ARGUMENT

## I. The district court did not abuse its discretion when it concluded that Pledger was required to file a screening certificate of merit in compliance with West Virginia state law *before* he filed an FTCA medical negligence lawsuit in federal court.

### A. The FTCA is a limited waiver of governmental sovereign immunity that requires a prospective plaintiff to meet certain jurisdictional requirements before he files a lawsuit.

The United States of America cannot be sued without its permission. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994); *United States v. Sherwood*, 312 U.S. 584, 586 (1941) (citations omitted). Federal courts lack subject matter jurisdiction to address lawsuits against the federal government unless the United States of America explicitly consents to be sued by clearly and specifically waiving sovereign immunity. *Id.* Specifically, "[n]o action lies against the United States unless the legislature has authorized it." *Wood v. United States*, 845 F.3d 123, 127 (4th Cir. 2017) (quoting *Dalehite v. United States*, 346 U.S. 15, 30 (1953)).

A prospective plaintiff bears the burden to prove that his claims are authorized by an explicit waiver of sovereign immunity. *Welch v. United States*, 409 F.3d 646, 651 (4th Cir. 2005) (citations omitted).

The FTCA is a narrowly tailored and limited waiver of sovereign immunity that imposes tort liability on the United States under certain circumstances for injuries caused by the negligent or wrongful acts or omissions of federal government employees. 28 U.S.C. § 1346(b). Notably, the FTCA does not create an independent

legal cause of action. *Medina v. United States*, 259 F.3d 220, 223 (4th Cir. 2001) (citations omitted). Instead, the FTCA holds the United States liable *only* where a private individual would be liable under similar circumstances for a state law tort in the relevant jurisdiction. *Id.* (citations omitted). Therefore, FTCA liability is governed by state law where the relevant conduct occurred. *Rayonier Inc. v. United States*, 352 U.S. 315 (1957); *Myrick v. US*, 723 F.2d 1158 (4th Cir. 1983) ("In actions brought under the FTCA, federal courts apply the substantive law of the state in which the act or omission giving rise to the action occurred.").

Because the FTCA is a finite and constrained exception to the general rule that the United States of America is immune from being sued, this narrow waiver of sovereign immunity must be "scrupulously observed and not expanded by the courts." *Kokotis v. U.S. Postal Serv.*, 223 F.3d 275, 278 (4th Cir. 2000) (citations omitted). Like any waiver of sovereign immunity, the FTCA *must be strictly construed* in favor of the government. *Radin v. United States*, 699 F.2d 681, 685 (4th Cir.1983) (citing *United States v. Testan*, 424 U.S. 392, 399 (1976)).

A prospective plaintiff must file an FTCA action in "careful compliance" with the statute's terms. *Kokotis*, 223 F.3d at 278. Before a prospective plaintiff can pursue an FTCA lawsuit against the United States, he must meet certain jurisdictional prerequisites to properly present an administrative claim to the appropriate federal agency within two (2) years after the purported injury. 28 U.S.C.

§ 2401(b); 28 U.S.C. § 2675(a).

Properly presenting an administrative claim is a crucial jurisdictional prerequisite that must be satisfied before a prospective plaintiff can sue the United States pursuant to the FTCA. 28 U.S.C. § 2401(b) (a tort claim against the United States is "forever barred" unless it is properly and timely presented to the appropriate federal agency). *See also Henderson v. United States*, 785 F.2d 121, 123 (4th Cir. 1986) (citing *Kielwien v. United States*, 540 F.2d 676, 679 (4th Cir. 1976), *cert. denied*, 429 U.S. 979 (1976)).

**B. West Virginia law requires a prospective plaintiff to file a screening certificate of merit to support his allegations *before* he files a medical negligence or malpractice lawsuit.**

The Medical Professional Liability Act, W. Va. Code § 55-7B-1, *et seq.*, governs medical negligence claims in West Virginia. The plaintiff bears the burden of proving negligence and that the lack of skill on the part of the physician proximately caused the injuries suffered. *See* W. Va. Code §§ 55-7B-7 ("The applicable standard of care and the defendant's failure to meet said standard, if at issue, shall be established in medical professional liability cases by the plaintiff[.]").

Ordinarily, a claim of medical negligence must be supported by expert testimony. *See Osborne v. United States*, 166 F. Supp. 2d 479, 497 (S.D. W. Va. 2001). Where a medical negligence claim involves an assessment of whether the plaintiff was properly diagnosed and treated, or whether the health care provider was

the proximate cause of the plaintiff's injuries, expert testimony is required. *Banfi v. American Hosp. for Rehabilitiation*, 529 S.E.2d 600, 605-06 (W. Va. 2000).

Expert testimony must be presented to support even a prima facie claim of medical malpractice, unless the physician's "lack of care or skill is so great and gross that expert testimony is unnecessary." *Osborne*, 166 F. Supp. 2d at 498, n.13. Additionally, "[t]he physician is not bound to provide the patient with the highest degree of care possible. The mere fact a patient is not cured by the physician's treatment does not establish or raise a presumption of negligence." *Id.*

Specifically, a prospective plaintiff must complete certain prerequisites, including providing a screening certificate of merit, *before* he sues a healthcare provider. *See* W. Va. Code § 55-7B-6 (statute entitled "prerequisites for filing an action against a health care provider"). This statute "imposes special requirements that must be met *before* a suit can be filed." *Stanley v. United States*, 321 F. Supp. 2d 805, 808 (N.D. W. Va. 2004) (Keeley, J.) (emphasis in original). Indeed, the certificate of merit is a pre-filing requirement and a "necessary prerequisite" to maintain a medical professional liability lawsuit. *Id.* at 808-809. The screening certificate of merit is a statement from a medical expert opining that the applicable standard of care was breached. W. Va. Code § 55-7B-6(b).

The certificate requirement may be excused only if "the cause of action is based upon a well-established legal theory of liability which does not require expert

testimony supporting a breach of the applicable standard of care." W. Va. Code § 55-7B-6(c). Even then, the plaintiff must still file a statement setting forth the basis of alleged liability. *Id*. The standard applied to determine whether a certificate of merit is excused is whether "lack of care or want of skill is so gross, so as to be apparent, or the alleged breach relates to noncomplex matters of diagnosis and treatment within the understanding of lay jurors by resort to common knowledge and experience." *Banfi v. American Hospital for Rehabilitation*, 529 S.E. 2d 600, 606 (W. Va. 2000) (quoting *Totten v. Adongay*, 337 S.E. 2d 2 (W. Va. 1985)). Stated another way, the "'common knowledge' exception to [the] requirement of expert testimony in medical malpractice cases operates when 'the medical negligence is as blatant as a "fly floating in a bowl of buttermilk" so that all mankind knows that such things are not done absent negligence[.]'" *Banfi*, 529 S.E. 2d at 606 (quoting *Murphy v. Schwartz*, 739 S.W. 2d 777, 778 (Tenn. Ct. App. 1986)). As the Supreme Court of West Virginia has explained, this exception is rare. *See Totten*, 337 S.E. 2d at 7 (describing the common knowledge exception is as "rare").

Requiring a prospective plaintiff to consult an expert and provide a screening certificate before he sues a healthcare provider limits frivolous medical negligence and malpractice lawsuits. *Stanley*, 321 F. Supp. 2d at 809. Specifically, requiring a prospective plaintiff to file a certificate of merit before he files a lawsuit is "not intended to restrict or deny citizens' access to the courts." *Hinchman v. Gillette*, 217

W. Va. 378, 385 (2005). Instead, the certificate requirement is designed to prevent frivolous medical malpractice lawsuits and to promote resolution of non-frivolous claims in advance of formal litigation. *Id*.

### C. The West Virginia certificate of merit requirement is substantive and therefore applicable in federal court.

Because Pledger was *pro se* while he litigated his case in the district court, his pleadings were generally required to be construed liberally and held to a less stringent standard than pleadings drafted by an attorney. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (per curiam); *Estelle v. Gamble*, 429 U.S. 97 (1976). However, an unrepresented litigant cannot capitalize on equity to excuse his own mistake, ignorance of the law, or lack of legal resources. *See United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004) (citations omitted). Indeed, the United States Supreme Court has "never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel." *McNeil v. United States*, 508 U.S. 106, 113 (1993).

This Court previously concluded that state statutes imposing pre-litigation requirements, like the West Virginia certificate of merit requirement, are substantive and therefore applicable in federal court. *See Davison v. Sinai Hosp.*, 462 F. Supp. 778 (D. Md. 1978), *aff'd by Davison v. Sinai Hosp.*, 617 F.2d 361 (4th Cir. 1980). In *Davison*, this Court affirmed a district court order which analyzed a Maryland state statute that required prospective plaintiffs to submit their claims to an

arbitration panel before filing a lawsuit in state court. *Id*. The district court reasoned that United States Supreme Court precedent, articulated in *Hanna v. Plumer*, 380 U.S. 460 (1965), instructs courts to consider two policies when deciding whether a particular provision is substantive or procedural. *Id*. First, the character or result of litigation should not materially differ because the lawsuit was filed in federal court rather than state court. *Id*. Second, forum shopping should be discouraged. *Id*. The district court concluded that the character of litigation would differ drastically if plaintiffs in Maryland state courts were required to submit their claims to an arbitration panel before filing a lawsuit while plaintiffs in federal court were not. *Id*. This Court affirmed based on the "well-reasoned opinion of the district court." *Id*.

Further, this Court has previously found that the failure to file a screening certificate of merit in accordance with West Virginia law is fatal to an FTCA medical negligence or malpractice claim. *See Lancaster v. USP Hazelton*, 742 F. App'x. 724 (4th Cir. 2018) (per curiam) (unpublished).[3] Indeed, constituent district courts within this judicial district have repeatedly relied upon this Court's guidance and dismissed FTCA medical negligence lawsuits where the plaintiff failed to present a screening certificate of merit before he filed his lawsuit. *See Jerome Scott v. United States*, 2020 WL 1502857, at *3 (N.D. W. Va. Mar. 30, 2020) (citing *Stanley*, F. Supp. 2d

---

[3] Although *Lancaster* is unpublished and, therefore, not binding, it does represent persuasive guidance from this Court upon which constituent district courts within this judicial circuit rely.

at 80 (noting that "compliance with West Virginia Code Section 55-7B-6 (obtaining a screening certificate of merit) is mandatory prior to filing a suit in federal court"); *Carter v. United States*, 2019 WL 7501396 (S.D. W. Va. Dec. 13, 2019), *Report and Recommendation Adopted by Carter v. United States*, 2020 WL 97720 (S.D. W. Va. Jan. 8, 2020).

Pursuant to the legal framework detailed above, the FTCA imposes liability upon the United States of America only to the extent that a private medical provider would be liable pursuant to state law. In West Virginia, a prospective plaintiff must present a certificate of merit *before* he files a lawsuit against a private healthcare provider in West Virginia. Much like *Davison*, requiring a prospective plaintiff to file a certificate of merit before he files a medical negligence or malpractice claim in West Virginia state court but not in federal court would dramatically alter the character and result of medical negligence and malpractice lawsuits in federal court as compared to state court. Therefore, the certificate of merit requirement is substantive and applicable in this federal lawsuit.

Moreover, the FTCA procedural requirements described above do not supplant or conflict with the state law certificate of merit requirement. *Stanley*, 321 F. Supp. 2d at 808-09. Rather, a prospective plaintiff must comply with both. *Id*. Further, the Federal Rules of Civil Procedure do not supplant or conflict with the state law certificate of merit requirement. *See* Fed. R. Civ. P. 1. Specifically, the

Federal Rules of Civil Procedure apply after a lawsuit is filed in federal court, while the certificate of merit requirement is a prerequisite that must be completed before a prospective plaintiff files a lawsuit. *Id*. Moreover, the Federal Rules of Civil Procedure must be administered to ensure the "just, speedy, and inexpensive determination of every action." *Id*. This directive aligns with the goal of the West Virginia certificate of merit requirement to limit frivolous medical negligence and malpractice claims. *Stanley*, 321 F. Supp. 2d at 809.

Accordingly, the West Virginia certificate of merit requirement is substantive and applicable in FTCA cases against the United States of America in federal court.

**D. Because Mr. Pledger failed to follow the pre-suit notice requirements of the West Virginia Medical Professional Liability Act ("MPLA"), W.Va. Code §55-7B-6, before filing a medical negligence cause of action against St. Joseph's Hospital, the district court properly dismissed Mr. Pledger's medical negligence claim against SJH.**

As to SJH, Mr. Pledger appears to argue only that the Federal Rules of Civil Procedure displace the WV MPLA pre-suit notice requirements and, therefore, he was not required to provide SJH with a notice of claim or screening certificate of merit before filing his claim against SJH in federal court.[4]

While incarcerated at FCI-Gilmer, Mr. Pledger received medical care on one occasion at SJH. In his Complaint, Mr. Pledger alleged:

> On or about 5/19/15 [Pledger] was sent out of prison to St. Joseph's

[4] Pledger does not challenge the ruling of the District Court that SJH is not a proper *Bivens* defendant, and, therefore, not subject to Pledger's claims of deliberate indifference. JA935.

> Hospital for a Endoscopy and for Colonoscopy, hospital told [Pledger] he did not have Crohn's by Defendant Salvatore [Lanasa] [Pledger] alleges that endoscopy, and colonoscopy was not performed correctly in order for misdiagnosis of no Crohn's.

JA 81 (as written, except as otherwise indicated).

It is clear from the factual allegations made by Mr. Pledger that his cause of action against SJH is based on health care he received at SJH. Pursuant to W.Va. Code §55-7B-1(e), "health care" means: "(1) Any act, service or treatment provided under, pursuant to or in the furtherance of a physician's plan of care, a health care facility's plan of care, medical diagnosis or treatment; [or] (2) Any act, service or treatment performed or furnished, or which should have been performed or furnished, by any health care provider or person supervised by or acting under the direction of a health care provider or licensed professional, to or on behalf of a patient during the patient's medical care, treatment or confinement." Consequently, Mr. Pledger's cause of action against SJH is governed by the West Virginia MPLA, W.Va. Code §55-7B-1, *et seq.*, which imposes certain pre-suit requirements upon a medical malpractice plaintiff:

West Virginia Code §§55-7B-6(b) and (c) provide that:

> (b) At least thirty days prior to the filing of a medical professional liability action against a health care provider, the claimant shall serve by certified mail, return receipt requested, a notice of claim on each health care provider the claimant will join in litigation. The notice of claim shall include a statement of the theory or theories of liability upon which a cause of action may be based,… together with a screening certificate of merit. The screening certificate of merit

> shall be executed under oath by a health care provider qualified as an expert…and shall state with particularity: (1) The expert's familiarity with the applicable standard of care in issue; (2) the expert's qualifications; (3) the expert's opinion as to how the applicable standard of care was breached; and (4) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death. A separate screening certificate of merit must be provided for each health care provider against whom a claim is asserted.
>
> (c) Notwithstanding any provision of this code, if a claimant or his or her counsel, believes that no screening certificate of merit is necessary because the cause of action is based upon a well-established legal theory of liability which does not require expert testimony supporting a breach of the applicable standard of care, the claimant or his or her counsel, shall file a statement specifically setting forth the basis of the alleged liability of the health care provider in lieu of a screening certificate of merit.

The West Virginia Medical Professional Liability Act (MPLA) clearly states, "no person may file a medical professional liability action against any healthcare provider without complying with the provisions of this section." W.Va. Code §55-7B-6(a). Compliance with the requirements of W.Va. Code §55-7B-6 is mandatory prior to filing a medical malpractice suit in federal court. *Stanley v. United States*, 321 F. Supp. 2d 805, 806-07 (N.D. W.Va. 2004). Notwithstanding these clear statutory requirements, prior to filing suit against SJH, Mr. Pledger did not serve SJH with a notice of claim, a screening certificate of merit or a statement in lieu of a screening certificate of merit as permitted in exceptional circumstances by W.Va.

Code §55-7B-6(c).[5] For this reason, the District Court lacked subject matter jurisdiction over Mr. Pledger's medical negligence cause of action and properly dismissed it. "The pre-suit notice requirements contained in the West Virginia [MPLA] are jurisdictional, and failure to provide such notice deprives [a court] of subject matter jurisdiction." Syl. Pt. 2, *State ex rel. PrimeCare Medical of West Virginia, Inc. v. Faircloth,* 835 S.E.2d 579, 242 W.Va. 335 (2019).

In his appeal, Mr. Pledger asserts that the pre-suit notice requirements set forth in the West Virginia MPLA are supplanted by the Federal Rules of Civil Procedure when a medical malpractice case is filed in federal court. Pledger Brief, ECF No. 20 at 30. This argument is without merit and the Federal Rules of Civil Procedure, which apply to a cause of action once suit has been filed, are not an adequate substitute for the pre-suit requirements set forth at W.Va. Code 55-7B-6 inasmuch as the pre-suit notice requirements provide substantive rights to potential medical malpractice defendants. "After careful consideration of the provisions of the statute at issue, we conclude that the Legislature's clear intent in enacting W.Va. Code §55-7B-6 was to mandate that a plaintiff in a medical malpractice claim file his or her

---

[5] This narrow exception would, nevertheless, be inapplicable to Mr. Pledger's claim against SJH because the proper performance of an endoscopy and colonoscopy and the diagnosis of Crohn's disease from an endoscopy and colonoscopy are not within the knowledge of lay people and require expert testimony to establish the applicable standard of care and causation. "Expert testimony is required if the medical negligence claim involves an assessment of whether the plaintiff was properly diagnosed and whether the health care provider was the proximate cause of the plaintiff's injuries." *Banfi v. Am. Hosp. for Rehab.*, 529 S.E. 2d 600, 605-06 (W.Va. 2000). *See also O'Neill v. United States,* No. 5:07CV358, 2008 WL 906470, at *4 (S.D. W.Va. Mar. 31, 2008) quoting *Farley v. Shook,* 629 S.E.2d 739, 744-45 (W.Va. 2006).

certificate of merit at least 30 days prior to filing his or her medical malpractice action so as to allow health care providers the opportunity to demand pre-litigation mediation." (emphasis added). *See also* Syl, Pt. 2, *Hinchman v. Gillette,* "…the purposes of requiring a pre-suit notice of claim and screening certificate of merit are (1) to prevent the making and filing of frivolous medical malpractice claims and lawsuits; and (2) to promote the pre-suit resolution of non-frivolous medical malpractice claims…". Clearly, the WV MPLA pre-suit notice requirements are not merely a "procedural mechanism" or a "pleading rule" as asserted by Mr. Pledger. (ECF 20, pp. 14; 25). Instead, they are substantive law and applicable in medical malpractice claims arising in West Virginia and filed in federal court. *Stanley v. United States,* 321 F. Supp. 2d 805, 808 (N.D. W.Va. 2004). The District Court properly applied this analysis to the medical negligence claims raised in the FTCA against the government defendants and the medical negligence claim against SJH, JA 0992-0995, and ruled that the "medical negligence claim and the FTCA medical negligence claim are **DISMISSED WITH PREJUDICE."** JA 0995 (emphasis in original).

## II. The district did not abuse its discretion when it determined that available evidence supported its conclusion that Pledger could not prove that defendants Anderson, Alicia Wilson, and Andrea Hall were deliberately indifferent to his Crohn's disease.

### A. Imposing personal financial liability on individual government employees in *Bivens* cases is increasingly disfavored.

A *Bivens* lawsuit targets the personal financial assets of federal government employees in order to deter the individual actor from engaging in unconstitutional behavior. *See Carlson v. Green*, 446 U.S. 14, 21 (1980); *Hall v. Clinton*, 235 F.3d 202, 204 (4th Cir. 2000); *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 70 (2001) (noting that *Bivens* liability implies "an otherwise nonexistent cause of action against *individual officers* alleged to have acted unconstitutionally") (emphasis in original).

Indeed, a *Bivens* lawsuit is "a blunt and powerful instrument for correcting constitutional violations and not an 'automatic entitlement' associated with every governmental infraction." *Benzman v. Whitman*, 523 F.3d 119, 125 (2d Cir. 2008) (quoting *Wilkie v. Robbins*, 551 U.S. 537 (2007)). *See also Lebron v. Rumsfeld*, 670 F.3d 540, 552 (4th Cir. 2012) (acknowledging the "blunt deterrent of money damages under *Bivens*"). Accordingly, a *Bivens* claim is brought against the individual official for his or her own acts, not the acts of others. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1860 (2017).

Recently, the United States Supreme Court "expressed open hostility to expanding *Bivens* liability." *Tun-Cos v. Perrotte*, 2019 WL 1867819, at *4 (4th Cir. Apr. 26, 2019). Indeed, *Abbasi* "marked a substantial shift in how courts are to interpret allegedly unconstitutional acts by federal actors when there is no statute permitting a damages remedy." *Holloway v. Coakley*, *et al.*, Case No. 2:17-cv-74, Oder Dismissing Case, Electronic Docket Entry No. 173 (N.D. W. Va. Apr. 8, 2019).

*Abbasi* narrowed the applicability of *Bivens*, cautioning courts to first consider whether to imply a remedy *at all* before reaching the merits of such claims. *See Abbasi* 137 S. Ct. 1843. The Court left no doubt that expanding the personal liability associated with *Bivens* is "a 'disfavored' judicial activity." *Abbasi*, 137 S. Ct. at 1857 (citations omitted). Indeed, United States Supreme Court Justice Clarence Thomas recently cautioned: "The analysis underlying *Bivens* cannot be defended. We have cabined the doctrine's scope, undermined its foundation, and limited its precedential value. It is time to correct this Court's error and abandon the doctrine altogether." *Hernandez v. Mesa*, 140 S. Ct. 735, 752 (2020) (Thomas, J. Concurring).

Moreover, the Supreme Court encourages courts to defer to the executive branch and the judgment of prison officials to administer correctional facilities. *Bell v. Wolfish*, 441 U.S. 520, 545-48 (1979) (citations omitted)*; Jones v. North Carolina Prisoner's Union*, 433 U.S. 119, 137 (1977) (noting that while there is a need to protect "certain basic rights of inmates," prison administration is best left to "those with the most expertise in th[e] field," not the courts). Prison officials "must be free to take appropriate action to ensure the safety of inmates and corrections personnel and to prevent escape or unauthorized entry." *Wolfish,* 441 U.S. at 547.

The complex challenges of prison administration lack easy solutions. *Id*. Therefore, prison administrators are entitled to "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to

preserve internal order and discipline and to maintain institutional security." *Id*. at 547. (citations omitted). Operating federal prisons is "peculiarly the province of the Legislative and Executive Branches of our Government, not the Judicial." *Id*. (citations omitted). Corrections officials face "Herculean obstacles" that require "expertise, comprehensive planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government." *Procunier v. Martinez*, 416 U.S. 396, 405 (1974), *rev'd in part on other grounds*, *Thornburgh v. Abbott,* 490 U.S. 401 (1989). Therefore, separation of powers requires courts to exercise restraint when analyzing prisoner rights. *Turner v. Safley*, 482 U.S. 78, 85 (1987).

**B. The district court properly concluded that Pledger did not meet the extremely high burden of proof to establish that defendants Anderson, Alicia Wilson, and Andrea Hall were deliberately indifferent to his Crohn's disease.**

Although the United States Constitution does not require "comfortable prisons," it does not tolerate inhumane incarceration. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Rhodes v. Chapman*, 452 U.S. 337, 349, (1981); 18 U.S.C. § 4042(a). Prisoners are entitled to <u>*reasonable*</u> medical care. *Russell v. Sheffer*, 528 F.2d 318, 318 (4th Cir. 1975) (citations omitted). The Eighth Amendment prohibits cruel and unusual punishment. *Estelle*, 429 U.S. at 102-108 (citations omitted). A prison official violates that prohibition when he is deliberately indifferent to an inmate's serious medical need. *Id*.

Deliberate indifference is more than negligence. *Farmer*, 511 U.S. at 835. Conduct that constitutes medical malpractice does not necessarily constitute deliberate indifference. *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014).

A prison official is not deliberately indifferent unless he knows about, appreciates, and disregards an excessive risk to inmate health or safety. *Id*. at 837. This is a "particularly high bar to recovery." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). A disagreement between an inmate and prison staff regarding diagnosis or treatment cannot support a constitutional claim. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985). Prison medical authorities have "considerable latitude" in the "diagnosis and treatment of [. . .] inmate patients." *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977).

Specifically, this Court "disavow[s] any attempt to second-guess the propriety or adequacy of a particular course of treatment," because health care is "a question of sound professional judgment." *Id*. Indeed, the Fourth Circuit has warned that "courts *will not* intervene upon allegations of mere negligence, mistake or difference of opinion." *Id*. (collecting cases) (emphasis added). *See also Estelle*, 429 U.S. at 102-108 (negligence in diagnosing or treating a medical condition "does not state a valid claim of medical mistreatment under the Eighth Amendment" and medical negligence does not become a constitutional violation merely because the patient is a prisoner); *Russell*, 528 F.2d at 318 (questions of medical judgment are not subject

to judicial review); *Sosebee v. Murphy*, 797 F.2d 179 (4th Cir. 1986) (negligence in diagnosis does not create a constitutional claim). In other words, a court cannot substitute its own medical judgment, however informed and thorough, for that of prison medical authorities. *Id*.

Pledger may disagree with the medical treatment he received, especially with the benefit of hindsight. However, pursuant to the legal framework outlined above, such disagreement does not give rise to an actionable constitutional claim. Pledger cannot retroactively criticize or second-guess medical treatment where he has not established that any individual defendant knew about, appreciated, and purposely disregarded a serious risk to his health. Even if the individual defendants ultimately made incorrect diagnoses and medical recommendations, this would amount, at most, to negligence, and not deliberate indifference sufficient to present a constitutional claim and impose personal financial and legal responsibility.

As the district court noted, prison medical records reflect that pledger visited prison doctors, nurses, and medical personnel at least thirty-six (36) times. *See* District Court Dismissal Order, JA 989. Prison medical staff suggested various options that Pledger refused, including a colonoscopy, medication, dietary suggestions, and other testing. *Id*. Further, the district court specifically analyzed the actions of Anderson, Alicia Wilson, and Andrea Hall. *See* District Court Dismissal Order, JA 990-992. With respect to Anderson, the district court noted that a different

doctor recommended that Pledger not take Mesalamine, which cannot establish deliberate indifference on the part of Anderson. *See* District Court Dismissal Order, JA 990. With respect to Alicia Wilson, the district court notes that Wilson merely signed medical notes, which "does not begin to prove that defendant Wilson knew of and consciously disregarded the risk that [Pledger's] colon or appendix would need to be surgically removed." *See* District Court Dismissal Order, JA 990-991. With respect to Andrea Hall, the district court noted that Hall suggesting that Pledger was exaggerating his pain also does not prove that Hall was deliberately indifferent to Pledger. *See* District Court Dismissal Order, JA 991-992. Ultimately, the district court noted that the record and the magistrate judge's report and recommendation "make clear that plaintiff received frequent and continuous medical care," and that any disagreement Pledger may have with the medical care he received "does not satisfy the high deliberate indifference standard." *See* District Court Dismissal Order, JA 992. Accordingly, the district court granted summary judgment to Anderson, Wilson, and Andrea Hall on the deliberate indifference claims. *Id*.

As detailed herein, the decision by the district court to grant summary judgment to Anderson, Wilson, and Andrea Hall on the deliberate indifference claims is well within the parameters of summary judgment jurisprudence. In the interests of efficiency and economy, judges have an "affirmative obligation" to prevent "factually unsupported claims" from proceeding to trial. *Felty v. Graves-*

*Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987). Therefore, the district court is empowered to grant summary judgment where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A party opposing summary judgment cannot rest on his complaint. *Anderson v. Liberty Lobby*, 477 U.S. 242, 247-50 (1986). The "mere existence of *some* alleged factual dispute" does not preclude summary judgment. *Id.* at 247-48 (emphasis in original). A litigant cannot create a genuine factual dispute through speculation or building one inference upon another. *Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir.1985) (citations omitted). Unsupported speculation cannot avoid summary judgment. *Ennis v. National Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir.1995) (citations omitted). A party opposing summary judgment must present evidence to support any alleged factual dispute. *Anderson*, 477 U.S. at 249-250 (citations omitted). That evidence must be more than speculative. *Id*. Indeed, the evidence must be convincing and probative enough to require a judge or jury to resolve differing versions of the truth at a trial. *Id*.

Federal Rule of Civil Procedure 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Where a

party fails to support an essential element of his case, there is no genuine dispute regarding *any* material fact because "a complete failure of proof concerning an essential element" of a legal claim "necessarily renders all other facts immaterial." *Id*. at 322-23 *See also Rhodes v. E.I. du Pont de Nemours & Co.*, 636 F.3d 88, 94 (4th Cir. 2011) (citations omitted). The moving party is entitled to judgment *as a matter of law* because the party opposing summary judgment has fundamentally failed to support his case. *Id*.

Summary judgment is "integral" to the Federal Rules of Civil Procedure, designed to "secure the just, speedy and inexpensive determination of every action." *Celotex Corp.*, 477 U.S. at 327 (citations omitted). Summary judgment is designed to *promptly* dismiss unsupportable claims. Commentary to Fed. R. Civ. P. 56 (1937 Adoption). The "mission" of summary judgment is to "pierce the pleadings" and "assess the proof" to see if there is a genuine need for trial. Commentary to Fed. R. Civ. P. 56 (1963 Amendment). Summary judgment is proper where the record "could not lead a rational trier of fact to find for" the party opposing dismissal. *Teamsters Joint Council No. 83 v. Centra, Inc.,* 947 F.2d 115, 119 (4th Cir.1996) (citations omitted).

In stark contrast to Pledger's position in this appeal, the district court did not convert a motion to dismiss on behalf of individual defendants Anderson, Wilson, and Andrea Hall into a motion for summary judgment. Instead, the defendants filed

a motion to dismiss or, in the alternative, for summary judgment. *See* Motion to Dismiss or for Summary Judgment, JA 117-815. That motion was supported by hundreds of pages of medical records detailing the medical treatment that Pledger received at FCI Gilmer. *Id*. Accordingly, Pledger had notice from the time he received that motion that the defendants were requesting *either* dismissal *or* summary judgment and that the district court might implement either standard to dispose of the claims against the individual federal defendants. *Id*. The district court sent Pledger a notice outlining the applicable legal standards for both dismissal and for summary judgment and explicitly notifying Pledger that summary judgment is proper where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party. *See* Roseboro Notice, JA 816-818.

The district court reasonably concluded that the medical records reflected a pattern of consistent treatment and that, regardless of any other evidence he might present, Pledger could not establish that defendants Anderson, Wilson, and Andrea Hall were deliberately indifferent to his Crohn's disease. Based solely on that determination, the legal summary judgment framework detailed above instructs that there is no genuine dispute as to any material fact with respect to the deliberate indifference claim because Pledger could not prove essential elements of that claim. It was within the district court's discretion to grant summary judgment without

further discovery, and the district court thoroughly detailed its reasoning with respect to the deliberate indifference claim. *See* District Court Dismissal Order, JA 984-992.

Based on the forgoing, the district court did not abuse its discretion when granted summary judgment in favor of defendants Anderson, Wilson, and Andrea Hall on the deliberate indifference claim because the district court reasonably concluded that Pledger could not substantiate that claim in any regard.

## **CONCLUSION**

Based on the forgoing, the district court did not abuse its discretion when it dismissed Pledger's FTCA medical negligence claim or his deliberate indifference claims. Accordingly, the federal appellees respectfully requests that this Court dismiss this appeal and affirm the district court's dismissal order.

Because Mr. Pledger subverted the letter and the spirit of the WV MPLA by failing to serve SJH with a pre-suit notice of claim and screening certificate of merit before filing a medical malpractice cause of action against SJH, the District Court properly granted SJH's Motion to Dismiss Mr. Pledger's *Bivens* Complaint. SJH respectfully requests that this Court affirm the order of the District Court dismissing Mr. Pledger's medical negligence claims against SJH. JA 995.

## ORAL ARGUMENT

The facts and issues are adequately stated in the briefs. Oral argument will not assist the decisional process.

Respectfully Submitted,

William J. Powell
United States Attorney

By: /s/ Tara N. Tighe
Assistant United States Attorney
WV Bar No. 12931
P.O. Box 591
Wheeling, WV 26003
Phone: (304) 234-0100
Fax: (304) 234-0112
*Counsel for Federal Appellees*

*/s/ Christine Vaglienti*
West Virginia University Health System
WV Bar No. 4987
1238 Suncrest Towne Centre
Morgantown, WV 26505
Phone: (304) 598-4199
Fax: (304) 598-9888
Counsel for St. Joseph's

## CERTIFICATE OF COMPLIANCE

This brief complies with FRAP 32(a) as follows:

1. This brief has been prepared using Microsoft Word, proportional typeface Times New Roman, 14 point.
2. EXCLUSIVE of the corporate disclosure statement; table of contents; table of citations; statement with respect to oral argument; any addendum containing statutes, rules or regulations; and the certificate of service, the brief contains 7,558 words.

I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions. If the Court so directs, I will provide an electronic version of the brief and/or a copy of the word or line print-out.

Date: April 16, 2020

By: /s/ Tara N. Tighe
Tara N. Tighe
WV Bar No. 12931
Assistant United States Attorney
P.O. Box 591
Wheeling, WV 26003
Phone: (304) 234-0100
Fax: (304) 234-0112

## CERTIFICATE OF SERVICE

I hereby certify that on April 16, 2020, I electronically filed the forgoing document with the United States Court of Appeals for the Fourth Circuit using the CM/ECF system, which will provide notice of such filing to all counsel of record.

By: /s/ Tara N. Tighe
WV Bar No. 12931
Assistant United States Attorney
P.O. Box 591
Wheeling, WV 26003
Phone: (304) 234-0100
Fax: (304) 234-0112